Good afternoon, everyone. Okay, we're here on Blixseth v. Yellowstone Development. And Ms. James. Good afternoon. May it please the Court. Becky James on behalf of the appellant, Timothy Blixseth. We are here on a narrow issue of the validity of an exculpation clause in the third amended plan of reorganization, one of the, probably the last remaining issue in this very long and tortured case. The issue here is an exculpation clause that by its terms releases third-party, non-debtor third parties. And specifically at issue in this appeal is the release of credit suisse, which is indisputably not the debtor. This Court's law is clear that the bankruptcy court may not release liabilities owed by non-debtors. Is that what this – is it your position that that's what this release does? Yes. Yes, Your Honor. Can you explain to me how you read it that way? Yes. The wording is very broad. And it does say that the, among others, not only the debtor, but the other third parties, including the first lien lenders and first lien agent, which would be credit suisse, shall not have or incur any liability for any act or omission in connection with, relating to, or arising out of the Chapter 11 cases. So, or the formulation, negotiation, implementation, confirmation or consummation of this plan, the disclosure statement or any contract instrument release or other agreement or document entered into during the Chapter 11 cases or otherwise created in connection with this plan. The language of it does seem to indicate a broad release of claims. And, in fact, it has been so interpreted to bar a claim in the District of Colorado. Mr. Blixeth did file a breach of contract claim in that district against credit suisse, which was held to be barred by the Exhibition Clause. What was the nature of the claim? Breach of contract based on the conduct of credit suisse in turning, essentially turning the, what should have been a nonrecourse loan into a recourse loan through in part is conduct in participating in this plan of reorganization to exculpate itself from the liability, putting all of the liability over to Mr. Blixeth. But it did deal with actions within the bankruptcy. I'm sorry? It dealt with actions within the bankruptcy. In part. In part, yes. Although ultimately the issue in the case was really the private contract between credit suisse. But the breach was within the, was part of the role of credit suisse on the credit committee. Right. I think they concluded that it was in relation to or in connection with the bankruptcy. And that is really the concern here. To back up a minute, we have, this is my understanding of the legal situation. You can tell me if I'm right. We have three and probably more cases which have broad language of the kind that you're saying, but all of which deal with 524E, which talks about such debt, i.e., the debt of the debtors. This has nothing to do with the debt of the debtors. And also all deal with pre-petition, guarantors or assurities or co-debtors or something like that, not actions of separate entities within the bankruptcy. Is that accurate? Well, I think that's correct, although the language in Loewen suisse, Loewen suisse, particularly. It's extremely broad, but it doesn't, but it's, but the concerns and the statute they were construing don't seem to have anything to do with this, with our, with this exculpation clause. Well, I mean, I think they do. I think it does have to do with the scope of the power of the bankruptcy code in a court under the code and whether they can discharge the liability of a third party, a non-debtor, in a claim. And truthfully, I mean, truthfully, our concern here is about third party, a third party claim versus a third party claim. So we're not involving the debtor at all. What we're really concerned about is Mr. Blixeth, who is not a party to the bankruptcy, his claims against Credit Suisse and to the extent that they are barred from, by the exculpation clause. And that should be outside of the context of the bankruptcy court. And so, I mean. But it would require interpreting the process of the bankruptcy development, that is, the settlement and the role of Credit Suisse within the bankruptcy and on the bankruptcy committee and so on. It means you have non-bankruptcy courts getting into the details of how the bankruptcy was worked out. No, because as the bankruptcy was worked out is the subject of the proceedings that we are in right now. Mr. Blixeth did proceed in the bankruptcy court to object to the plan. And that is the proper role of the bankruptcy court. That is the proper role of this proceeding. So there's no collateral challenge here to the plan. The plan has been properly challenged in the direct course, and that's what has brought us here to this point today. But the concern that we have about the exculpation clause is its breadth that can be interpreted to mean to exculpate Credit Suisse in matters that may touch on in some way or relate to, in some way, the bankruptcy, but that are not encompassed in the bankruptcy proceeding. So that is really the concern we have. Roberts, what was the case that Mr. Blixeth brought against Credit Suisse in Colorado? So the case is, it's case number 12CV-393 in the District of Colorado and was affirmed by the Tenth Circuit in 15-1375. What were the claims, though, against Credit Suisse in that case? So the one that was held to be subject to the exculpation clause was a breach of contract resulting from the conduct of Credit Suisse in combination with Mr. Blixeth, and had to do with it breaching the terms. The terms were to make this a nonrecourse loan as to Mr. Blixeth. But through their conduct, and part of the claim to make the contract. When you say to make that a nonrecourse loan, you're talking about what? You're talking about the original loan? Right. The original loan which provided for Mr. Blixeth to take a portion of that loan, and this is where this controversy arose, that was to be nonrecourse as to him. By engaging in, the allegation was, and it never got off the ground, right, so it's not very well developed, but in the complaint, the way it was set forth was their conduct in part in entering into this plan and settling with the debtor in this case was part of the breach of contract, breach of their own loan agreement. So that, of which he was basically a third-party beneficiary. So because the conduct at issue in what they had, what they did in connection with this bankruptcy proceeding was part of the breach, as alleged, or at least was evidence of the breach. Did he object to the plan on that ground in the bankruptcy court? That the, as to the exculpation clause? No. Did he object to the plan on the ground that it was a breach of his contract with Credit Suisse, or that Credit Suisse was breaching fiduciary duty, or otherwise, or could he have? I mean, why could he have objected to the bankruptcy plan to the settlement on that ground? Well, I don't think that was a direct claim, objection to the plan. I mean, the facts were out there. It objected to the plan, the second, it objected to the second version. Right, for the same reason. And they went along with the third version when they were added, when they were included within the scope of the expo. Right, exactly. So Credit Suisse took the same position we're taking now, which is, no, you can't do that. You can't have an exculpation clause under this circuit's law that exculpates third-party non-debtors. Only when it included them in the third plan did they then change their position and say, oh, well, actually now it's okay, which gets to the equitable mootness point, because they obviously knew, Credit Suisse obviously knew that this was an illegal provision. And they didn't say it. Without an exculpation clause, why would anybody want to be a member of, like, this unsecured creditors committee? Well, I mean, that might be a different issue with respect to the creditors committee, which isn't before us here. But as far as Credit Suisse is concerned, they could be they could have their own settlement. I mean, they can work out a settlement on their own with anyone, including Mr. Blixeth. But they don't need to be exculpated by the bankruptcy court as part of the bankruptcy plan. And that's the distinction. The debtor, they're the ones being governed by the bankruptcy court. So, you know, to the extent the debtor is being exculpated, that makes sense. But once you get out into non-debtors and into third parties, that should be a private matter between that not third party and other third parties, such as Mr. Blixeth. But part of what Mr. Blixeth's breach of contract claim was, as I recall, is the claim that the Credit Suisse controlled the creditors committee because it was appointing four members, four of the seven members of the creditors committee. So it is the creditors committee. Well, part of the claim was that Credit Suisse did control the YCLT, the liquidating trust. And that claim was rejected. But that's a little bit different claim than the breach of its own contract to the extent that that harm the investor. But I thought that's part of the claim in the Colorado case as to how they breached the contract was in that respect. I don't think that it's necessary to have in that case, and that's not my case, but I don't read it to be limited to the argument that Credit Suisse controlled. But it was part of the argument. But it was part of the argument. Then they rejected the fact that they controlled the creditors committee, but it was the argument. Well, again, never really get off the ground because it's just in the complaint stage and was dismissed. But let's go back to basics. Is there any provision of the Bankruptcy Code other than 524e that's relevant here? Not directly so. Right. So this is what it says. Except as provided in subsection A3 of this section, discharge of a debt of the debtor does not affect the liability of any other entity on or the property of any other entity for such debt, meaning the debt that's being released for the debtor. So what does that have to do with this Excavation Clause? I mean, first of all, it's questionable. Our case law is that that precludes an Excavation Clause that comes within the terms, although that isn't self-evident either, and I gather other circuits don't buy it, because if this only says what happens by operation of law, it doesn't say what you could agree to. But assuming that you can't even agree to it, what does it have to do with this Excavation Clause? Well, again, I think you have to look at this Court's interpretation. No, I want to know what this language has to do with it. Because it is expanding the scope of the discharge of liability beyond the debtor and to third parties. But not with regard to such debt, the debt of the debtor. With regard to such debt of the debtor, well, I mean, it goes further, I mean, as to for any act, any liability, and for any act or omission in connection with. So, I mean, it actually, this Excavation Clause goes beyond not only as to third parties, but as to what can be released, what could even be discharged. So, I mean, at least the way it's written, I mean, it certainly seems, and I think can be and has been interpreted to be so broad as to release the third parties here, including Credit Suisse, from claims that are not just the subject of the bankruptcy debt, not just the subject of the bankruptcy debt at issue, but as to broader claims. And that's the problem, because this clause doesn't cover that. Well, but I think the Ninth Circuit's case law does, and the Ninth Circuit does say you can't release it. Well, you can't just make things up. I mean, if 524C says X and one ought to read the cases under their facts and the statute. I mean, we can't make up something that's not in the statute. Well, but I think it does go to what the role of the bankruptcy court is. And I may have, may be too narrow in saying that's the only statutory provision, because I think what the court reasoned in Loewen-Schuss and the other cases is you do have to look at what the role of the bankruptcy court is. The role is limited to adjudicating the bankrupt estate, the debts of the debtor, and it does not expand out to discharging the liabilities or debts of third parties. So is the exculpation clause violate 524E as to everybody else who's within it as well? Well. I know they're not before us, but I just want to know, are exculpation clauses just not valid under 524E? To the extent that they do seek to exculpate non-debtor third parties, I would say so. Now, exculpation clauses that only exculpate the debtor and arguably I think its agents could be covered in that, but if they're third parties to third parties under Loewen-Schuss and the other cases in the circuit, I would say they're invalid. And that was exactly the trustee. I'm sorry? The trustee. The trustee. I am not sure whether that would be covered or not. Third party. I mean, they're third party. But it's a little different, because in that case you are dealing with the debtor and even maybe getting back to Judge Piatta's question about the creditor's committee, you are at least dealing with parties to the bankruptcy. I mean, and that may be a fact pattern that hasn't yet presented itself. And it isn't what we're arguing about here. What we are talking about is a truly third party, private party. It is not a fact pattern. I do see my time is just about out, so if I could remember. I think Judge Bresan may have had a question for you. Well, originally you were making the same argument with regard to Stephen Brown, who is the chair of the creditor's committee, right? I'm sorry, making the same argument as to? I didn't. Brown. Was that the name of the lawyer? Oh, right. Who was the chair of the creditor's committee or the liquidating trust? Right. The attorney who? Right. So you took the same position with regard to him, despite the fact that he did have an official position in the bankruptcy. Right. And that would be a problem to the extent, right, to the extent that he was excommitted. Now, he ultimately, that case was resolved favorably, but that would be — but that is obviously a different situation than what we face here. I'll give you a minute or two for rebuttal. Okay. Thank you, Your Honor. Thank you, Ms. Jones. May it please the Court, Chris Cariello for Credit Suisse. I'd like to start very — Can I ask a back-up question, a background question? Given the Colorado case and the fact that it's over, what's left to be fighting over? Absolutely nothing. Absolutely nothing. This is an academic dispute. So why didn't you settle? Just go — I mean, because they wouldn't settle? I mean, you're not going to tell me that. But I don't understand what we're fighting over. This is an academic dispute about an exculpation clause that certainly we think is valid and are here to defend, but that is having no ongoing effect on Mr. Blixith. Because presumably, any other case he would bring would be res judicata, and that other case would be res judicata. Black letter civil procedure law would bar claim splitting insofar as there are other claims. I did want to make — add some clarifications about what exactly happened in Colorado. So the breach of contract claim was brought in Colorado. It was, Judge Berzon, as you noted, based in part on this notion of control of the liquidating trust. The bankruptcy court rejected that argument. But it arose out of the initial loan? Is that what — is that what — The provision that is alleged to have been breached is a nonrecourse provision in the original loan. The conduct at issue here is conduct that occurred during the bankruptcy. So what Mr. Blixith alleged in his complaint in Colorado is that there are really, arguably, two theories. One is Credit Suisse controlled the liquidating trust and caused it to take certain actions. The bankruptcy court rejected that argument. That's now final. And the court in Colorado held on summary judgment that those — as to other claims in the context of a covenant of — a breach of the covenant of good faith and fair dealing claim held that that is collateral estoppel. So that's been rejected twice now, that basis for the argument. The other basis for the breach of contract argument was this notion that merely by joining the settlement, Credit Suisse somehow breached this provision. Also rejected, the underlying basis also rejected on summary judgment in Colorado, that's at 129 F. Sup. 3, 1209, was rejected on the ground that there was no showing of damage causation. Damage causation, just the same, is an element of a breach of contract claim. So even if it were true that somehow the exculpation clause could be modified to permit that claim to proceed somehow, it would just be swept away by the fact that the underlying basis for the claim was already rejected in the context of a different claim in Colorado, and that's now been affirmed. Kagan. And the district court, and I didn't ask Ms. James this, but I will, here, when Judge Henn asked what claims we were talking about, nobody told him. But was the case not filed yet? I mean, why was it a secret from him as to what claims Grant Credit Suisse were at stake? He kept asking. So I'm not exactly sure, Your Honor. I think it's been confusing. These are Mr. Blixith has pursued a dozen claims in three different forums and the bankruptcy court. So I think it's understandable that different courts have been confused about exactly what's being pursued at particular times. But here, when he was talking about the exculpation clause and ultimately deciding that it was, there was estoppel, what was this, mootness, what we called? Equipment mootness. He was, he did want to know what claims were being discussed. You're sort of half-heartedly defending the equitable mootness, but it seems to me that he, can you tell me why he didn't directly violate the mandate? So, Your Honor, I think the district court noted specifically, this is at ER 826. This is a hearing where the district court brought everybody into court and said, there's a lack of precision on what's going on. But there wasn't a lack of precision.  Fair enough, Your Honor. And I'm here to talk about the merits and certainly our brief, I think, in the willingness to talk about it. I mean, you briefed it, it was a very strange brief. You had a heading saying the equitable mootness was okay, and then everything you wrote about was about the exculpation clause, or a great deal of it. Your Honor, we think mootness was a reasonable finding based on the positions Mr. Blixeth took on remand. If this Court disagrees with the district court's reading of this Court's opinion, then I'm certainly not here to argue. But there's no reason you can't just decide the exculpation clause ourselves at this point. Absolutely right. Absolutely right. I think that's the right thing to do, and I think the parties have both asked the Court to do so. And so I'll turn to that question now. This exculpation clause, it's a modest clause, it's a modest use, and a justified use on the facts of this case of the bankruptcy court's power under Section 105A to issue any orders that are necessary or appropriate to effectuate the provisions of the code. And I think the critical thing to appreciate here is what this clause is and what it isn't. The only purpose of this clause, the only purpose is to assure the key players in this bankruptcy proceeding that having engaged with each other and decided this is the best course out of this Chapter 11 proceeding, the day after confirmation of that plan, they aren't going to be sued by litigants attempting to collaterally attack what they in good faith were attempting to do. In effect, all this provision does is channel challenges to the conduct of the bankruptcy itself through the bankruptcy. In the context of objections to the plan? Precisely, Your Honor. And Your Honor asked previously about whether Mr. Blixith could have or did raise the breach of contract, the breach of contract argument in the context of the bankruptcy. By that label, perhaps no. Did Mr. Blixith challenge the conduct that underlies that claim? Absolutely. In Adversary Proceeding 14 and within this proceeding challenged Credit Suisse's alleged control of the liquidating trust, again rejected by the bankruptcy court, raised this nonrecourse provision repeatedly, and in AP 14, the bankruptcy court actually attempted to fashion some relief on that basis. That came up to this court and this court had a different view of that. It went back down. But my point is, this has been litigated. It has been litigated in the bankruptcy court, and it's now final insofar as there are objections to the conduct of the plan. The purpose of the Exculpation Clause, it's a limited immunity. It's not meant to take away any party's rights or ability to challenge something that happened in the bankruptcy proceeding. Mr. Blixith has challenged everything. He's challenged it in the context of the bankruptcy proceeding. And the point of this clause is simply to reach some finality, to encode the principles that there's no collateral attack of this conduct available elsewhere. So under those circumstances, is the clause necessary? It is necessary. It's necessary largely for pragmatic reasons. I think it does encode other legal principles. It's, to be candid, belt and suspenders, which as a logical matter is less necessary, but as a pragmatic matter, hugely necessary. Well, but it's seems to me that there's this Third Circuit case called PRW or something. And this is broader than that, because that, when they talked there about the fact that it was just encoding the standards that are already applying, that's because that one was limited to essentially officials of the bankruptcy process. This one isn't. So I don't know. It doesn't seem to me that it is simply encoding existing protections, except to the and it doesn't in terms apply, take out challenges within the bankruptcy proceeding, right? So in other words, it would, once the theoretically, once the plan were approved, even in the bankruptcy court, you couldn't sue Credit Suisse. Once all of the objections had been available and were either litigated and lost or should have been litigated. Except for willful or grossly reckless. Right, exactly, Your Honor. And so anything intentional, anything grossly reckless or worse, for lack of a better word, is carved out of this clause. To the In Re PWS case in the Third Circuit, that recognizes that the scope of that particular provision as it relates to the unsecured creditors committee is supported by this limited immunity. All I think In Re PWS, excuse me, stands for in that respect is there's no categorical bar on exculpation clauses. What scope the exculpation clause should have in a particular case, who it should exculpate is a question for that particular case, and certainly one that needs to be supported by findings. But we have that here. We have extensive findings. So then the problem is that our language and our case law is pretty broad. So what do we do with that? I think Your Honor was exactly right. Section 524e simply does not apply to this. When we're talking about discharge and we're talking about the discharge of the debts of the debtor, we're talking about a very specific thing in bankruptcy, a very specific concept under 524e, which provides that the discharge releases one party, releases the debtor, but doesn't release other parties from those debts. So we're fundamentally talking about the subject matter of the bankruptcy, the debts that are to be adjusted. We're talking about an exculpation clause. We're a world away. It's a totally different species of clause. It's temporally limited to the bankruptcy itself, that is, post-petition and pre-effective date. It's limited in subject matter. It applies not to the subject matter of the bankruptcy, that is, the debts, but the conduct of the bankruptcy. So it goes to the bankruptcy court's ability to manage the bankruptcy proceedings themselves. And it is not an absolute release in the same way the third-party discharges in Lowentius and American Hardwoods and Underhill are, because it doesn't exculpate anything, gross negligence, or beyond that. So it's exceedingly limited, and that's why cases like NRA Southedge, the Western Asbestos case, the Lighthouse Lodge case that we cited, all recognize, certainly weren't ignoring Lowentius and Section 524e, but were recognizing that this doesn't come under Section 524e. Instead, because it's not prohibited by that provision, because it isn't the sort of third-party discharge that's being dealt with in those cases, the question is just whether it's justified on the particular record that's before the bankruptcy court. And again, this exculpation clause is rigorously, rigorously supported by findings in the record. First of all the Robertson, let me ask you a question before your time runs out. What would be the effect if we were to say this clause is too broad? Unfortunately, I think my answer is it depends. I think it's not too broad as to credit Suisse, certainly. If the court were to try to fashion some remedy, I think I would have to know exactly how it would be narrowed to answer that question. Suppose we just declared it too broad and just nullified the clause. Part of the question is, does it going to have any effect? I thought that's the way that you began your argument, was by saying it's really of no account. Well, Your Honor, so if you agree with me that it's of no account at this point, I think the proper course of action is to dismiss the appeal. Does that mean it's moot? Yes, Your Honor. It would be a purely academic advisory opinion. Well, how come nobody told us that? So, Your Honor, Your Honor has asked this court, asked Mr. Blixit in February of 2018 to show cause why there was still a live controversy here. Mr. Blixit failed to do that. And we asked him specifically about the settlement. About settlement and whether or not the appeal should otherwise be dismissed. I don't remember the otherwise part. The otherwise part is where I'm hanging my hat, Your Honor. I don't remember otherwise. I remember be dismissed. Certainly, there was an otherwise in there. At that point, it was incumbent on Mr. Blixit to explain what is the ongoing harm here, why is there still a dispute as to this clause. But you've never said, as far as I can remember, anything about this Colorado case being preclusive. I don't remember ever reading that anywhere. As to the Colorado case being? Being preclusive to the degree that there is no case he could bring against Clay and Suize. It's simply over, Your Honor. I know, but I'm just saying you've never said it before. Understood. We're standing here. Understood, Your Honor, and I think we did not because this court ordered Mr. Blixit to show cause why the case was not moot anymore. Mr. Blixit initially failed to respond, and so that was largely the basis of our argument. And I gather you're not now arguing that we should just get rid of the case because he didn't answer that. Because as far as I'm concerned, frankly, our order, he did respond with respect to this case. And so I don't think he was in breach of the order, and that's presumably why the clerk's office did not automatically dismiss it. It's all one case, right? Understood, Your Honor, and so I will spend the remainder of my time elsewhere. And where I would like to spend the remainder of my time is on the facts of this case and why this is not too broad a clause. What the district court found was that confirmation was extraordinarily difficult in this case. Debtor in possession funding was going to run out in a matter of days. The debtor was going to go out of business. People were going to lose their jobs. This club was going to be stripped for parts. And the bankruptcy court recognized Credit Suisse is the largest creditor here. There needs to be a settlement. That is the only path forward here. So it found, and all of this is at ER 35 to 51. It recognized that Credit Suisse was the largest creditor. It recognized that Credit Suisse was going to have to make extraordinary economic concessions in order for this plan to go. So that's the first thing it recognized. The second thing it recognized, in addition to Credit Suisse's immense contributions, this was a very unusually litigious case. The parties were jockeying, there was saber rattling, including from Mr. Blixith, and so what the bankruptcy court recognized is if this is going to happen, if this Chapter 11 plan is going to be, is going to be confirmed, this exculpation clause is going to be essential so that it can promise the parties who have made these contributions, who have forged this path forward, that they're not going to be undermined the day after confirmation. I see my time is up. You can finish your point. I respectfully request that the court affirm or dismiss the appeal. Okay. We'll put a minute on the clock there, Ms. James, if you can respond. So what is this case about at this point? I think it's about possible claims. Other claims in our- What did you say, possible claims? Possible claims. For one thing, the Colorado case, the case was dismissed based on the exculpation clause in that part. So to the extent that the exculpation clause is invalidated, I think Mr. Blixith would have a right to revisit that either in Colorado or elsewhere. Because it's still claim preclusion. Well, but that would be a change in circumstance that I think would be a challenge. Did you challenge the exculpation clause in the Tenth Circuit? Yes. And they rejected it and said, no, that was for the, you know, it was confirmed. They couldn't visit it there because it had been confirmed in the plan and they were powerless to excise it. So that puts it back here. That puts it back before this Court. And that's the concern. We have that case that has been decided that should be revisited, and to the extent there are other claims that may exist- How long ago did the Tenth Circuit decide that case? I think it was 2017. Let me see. February 3, 2017. 17. Okay. So if we overturn the exculpation clause, you could go back into the Tenth Circuit and undo a claim that's 12 years old? Mr. Blixith could go back to the District of Colorado, I think, and try to reopen that claim based on the change in circumstances. Again, I'm not counsel there, but I would think he would have an argument for certainly no claim preclusion and for tolling of statute of limitations given the change in circumstances. To the extent that there are – that this clause is so broad, the problem, too, is there may – there could be other claims out there that have not even been litigated between these parties that could be implicated by this clause, and much in the way that that breach of contract claims. Well, first of all, it's so many years later that it's very hard to believe that there's anything that could be litigated that isn't limitations precluded. Well, right, new facts continue to be developed, and with discovery rule and other tolling provisions, there could be claims out there that could be litigated. And if this claim, if this clause were really so limited as they are arguing – I mean, we're in this ironic position that it seems the parties are almost switched and they're trying to argue that it's a very limited application and we're arguing that it's broader. By arguing that, I'm not conceding that it should be interpreted to be so broadly, and I don't think it can be interpreted to be that way, but to the extent that courts do interpret it that way, that's what poses the problem. All right. Well, what are you concerned about? Because we can write an opinion telling – saying what we think this means, because it seems to me it is very limited. It deals with matters that arose during the bankruptcy and during that time period as well. So what is the concern? Well, I think the concern is really its existence, and the best remedy is simply to excise it. As Credit Suisse is arguing, what it really does is just duplicate the immunity – if their position is correct, it's really not necessary. It's only – because if it's only duplicating what is already protected by the limited immunity within the bankruptcy case, then it's not necessary. And the best way to deal with it is to get rid of it. It's not so much immunity as chatteling. That is, there was an opportunity to argue about this before the confirmation of the plan, right? The immunity issue really regards the trustee and the committees and so on. But with regard to Credit Suisse, it's not an immunity. They're not immune. But on the other hand, there was a chance to litigate these questions within the bankruptcy. Yes. Well, but what I think they're seeking – what they claim this is limited to is this temporal, only the events that are happening within the bankruptcy, to the extent that that is what is covered and it would be otherwise precluded by operation of law anyway, then this exculpation clause just isn't necessary. So what – all we're trying to do is excise it to the extent that it appears to or could be interpreted to apply to claims that are not otherwise immune or otherwise covered by the bankruptcy provisions. All right. Thank you, Ms. James. All right. That concludes our argument for this case, and we'll submit it at this time. And that concludes our session. Thank you.
judges: Paez, Berzon, Bybee